Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Ave, 7th Floor
New York, New York 10177
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | |
|---|---|
| YESH MUSIC, LLC, | Case No.: 20-cv-2639 |
| Plaintiff, | **ECF CASE** |
| v. | **COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT** |
| OUTPOST INC., | |
| Defendant. | |

---------------------------------------------------------------x

Plaintiff YESH MUSIC, LLC, by and through the undersigned counsel, brings this Complaint and Jury Demand against defendant OUTPOST INC. for damages based on copyright infringement and related claims pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101, et seq. ("the Copyright Act" or "Act") and violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-05 (the "DMCA").  Plaintiff alleges below, upon personal knowledge as to itself, and upon information and belief as to other matters so indicated.

## JURISDICTION AND VENUE

1.      This court has Infringing  matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (jurisdiction over copyright actions).

## SPECIFIC JURISDICTION

2.      CPLR § 302 (a)(3) authorizes this Court to exercise jurisdiction over nondomiciliaries who commit a tortious act without the state causing injury to person or property

within the state, except as to a cause of action for defamation of character arising from the act, if it: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

3. At bar, defendant is nondomiciliary headquartered in Toronto, Ca.

4. Defendant infringed, directly and indirectly, plaintiff's copyrighted recording from its headquarters in Toronto; this is a tort committed outside the state.

5. Defendant was put on notice by plaintiff, multiple times, that its copying, distribution, public display, and synchronization of plaintiff's copyrighted recording "The Slow Wait Part 2" (the "Copyrighted Recording") was unlicensed, and the plaintiff was domiciled in this state. Defendant elected to continue to infringe after each notice.

6. Defendant should have expected, or should reasonably have expected, its acts to have consequences in this state.

7. The Copyrighted Recording at issue here was used by defendant to promote its services, and overall company.

8. Defendant distributes its magazine internationally, and substantially all of its revenue is generated from international commerce.

9. Defendant's website states "We . . . aim to influence travellers [sic] and thrillseekers [sic] all over the world.

10. Defendant also regularly does or solicits business, or engage in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.

11. Specific jurisdiction is conferred over defendant pursuant to CPLR §§ 302(3)(i) and (ii).

## VENUE

12. A plaintiff may bring a case in: "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or, (3) if there is no district in which an action may otherwise be brought . . . a judicial district in which any defendant is Infringing to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3).

13. At bar, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## DUE PROCESS

14. There are no due process concerns in light of the fact that defendant committed an intentional tort that they knew had an effect in this Judicial District.

15. Defendant frequently contracts with companies in this Judicial District such that it reasonably knows it may be haled into this forum.

## PARTIES

16. Plaintiff YESH MUSIC, LLC is a New York limited liability company with a headquarters located at 75-10 197th St, 2nd Floor, Flushing, NY 11366.

17. Upon information and belief, defendant OUTPOST INC. is a foreign company with a headquarters located at 250 Augusta Ave, Toronto, ON M5T 2L7, Canada.

**FACTS**

18. Plaintiff is the sole beneficial owner by assignment of all rights to the original musical works titled *Second Sight*, *First Day*, *Call*, and *The Slow Wait (Part 2)* - U.S. Copyright Registrations Nos. SR 713,241, SR 708-490, SR 713-281, SR 713-280. See **Exhibit 1.**

19. Defendant is an international travel magazine.

20. Defendant claims it hired third-party Echo Bay Media as its agent for post-production. Echo Bay Media, as agent for defendant, created two video advertisements containing in total unlicensed copies of all four of the Copyrighted Recordings synchronized to the advertisements (collectively the "Infringing advertisements").

21. Defendant, without license or authority, copied, distributed, publicly displayed, and synchronized plaintiff's Copyrighted Recordings (i) *Second Sight*, *First Day* (2:15), and *Call* (7:25) to an infringing video advertisement titled "In From The Outpost with Jeff Fuchs Ep 1 The Salkantay Trek" (the "Infringing Advertisement One").

22. Defendant copied and then synchronized the Copyrighted Recordings to the Infringing Advertisement One without license or authority. Without license or authority, Defendant distributed and publicly displayed Infringing Advertisement One by posting it to the OUTPOST YouTube channel at <https://www.youtube.com/watch?v=O-bWXiI5aL0>; the OUTPOST TV website at <http://infromtheoutpost.com/in-from-the-outpost-peru-web-series/>; defendant's Facebook page at <https://m.facebook.com/Outpostmagazine/posts/10156815734040686>; and, defendant's OUTPOST MAGAZINE website at <https://outpostmagazine.com/infromtheoutpost/>.

23. Other uploads of the Infringing Advertisement One on websites like <http://loadmp4.info/video/the-outpost-ep1.html>, and many others may have been uploaded by

4

defendant. Alternatively, defendant is liable for contributory infringement in the event third-parties uploaded the Infringing Advertisement One.

24. Despite multiple notices from plaintiff, as of the date of this Complaint, defendant has refused to cease and desist from its infringement of plaintiff's exclusive rights to the Copyrighted Records.

**Infringing Advertisement Two**

25. Defendant's second infringing advertisement is titled "In From The Outpost with Jeff Fuchs Ep2 Time with the Chawaytiri", referred to here as Infringing Advertisement Two.

26. Defendant copied plaintiff's Copyrighted Recording (iv) *Second Sight* and synchronized it to Infringing Advertisement Two.

27. Again, defendant had no authority to use the Copyrighted Recording in any manner.

28. Defendant posted Infringing Advertisement Two to: its YouTube page at <https://www.youtube.com/watch?v=I2Vga6-zajQ>; its own website at <http://infromtheoutpost.com/in-from-the-outpost-peru-web-series/>, Outpost TV at <https://outpostmagazine.com/infromtheoutpost/>, and Outpost Magazine at <https://www.youtube.com/watch?v=I2Vga6-z>.

29. Defendant was put on notice by YouTube, as part of the Content ID system that it had no right to synchronize the Copyrighted Recording to Infringing Advertisement Two. Defendant, however ignored this notice.

5

**Notices of Infringement**

30. On May 18, 2020, plaintiff served defendant with a second notice informing defendant that there was no license for its copying, distribution, public display, and/or synchronization of each of the Copyrighted Recordings. **Exhibit 2**.

31. Defendant claimed its commercial exploitation of the Copyrighted Recordings was licensed, but offered no support for its conclusory defense.

32. On May 19, 2020, the Editor-in-Chief of defendant replied in pertinent part:

> We always (always!) follow music copyright protocols for our content, and have purchased rights for songs/music for certain projects, and yes can
> prove that.

33. While defendant's Editor-in-Chief adamantly insisted defendant always (and always was repeated twice) follows proper protocols for licensing "songs/music", defendant did not produce a license and continued to infringe.

34. By email dated May 20, 2020, the President of defendant dismissed plaintiff's notice and responded:

> Thank you. I will forward this to the appropriate person, and he will be in touch with you. As far as I am aware, all the music for our Peru series followed proper licensing protocol (as I said, we are very careful as a media company on this). It may take a day to get back to you, but you don't hear from us within a few days, please do email again. And I will ensure someone follows up with. Thanks for getting in touch.

**Exhibit 3**.

35. Defendant did not produce any licenses, because there is no license to produce.

36. Defendant, however, continued to infringe plaintiff's Copyrighted Recordings despite the fact that it new there was no license for any of the Copyrighted recordings.

37. The President of defendant sent a second email on May 20, 2020 stating:

> On May 20, 2020, at 1:27 PM, Matt Robinson <matt@outpostmagazine.com> wrote:
>
> Hello there and thank you for your note. All licenses to the music you have referred us to "Ep 2 Time with the Chawaytiri" - https://www.youtube.com/watch?v=I2Vga6-zajQ - have been properly purchased through our post production partners and there catalogue relationships. I have forwarded your note to them and they will forward the license details as soon as they have an opportunity to do so. Please keep in mind that the COVID situation has most people working from their homes and it may take a little longer then usual to hear back. Thank you for getting in touch. Cheers, Matt
>
> President, Outpost Travel Media
> 416-972-6527
>
> matt@outpostmagazine.com
> outpostmagazine.com
> tanyourmind.com
> infromtheoutpost.com

**Exhibit 3**.

38. Again, defendant did nothing more than claim its commercial exploitation and synchronization of the Copyrighted Recordings was licensed.

39. As for the purported claim that the Copyrighted Recordings were licensed through "their post-production partners and their catalogue relationships", defendant's unsupported and implausible defense fails due to impossibility. None of the Copyrighted Recordings are available through any catalogue, and no catalogue can offer blanket synchronization license even if they had the right to offer commercial use licenses.

40. But that is of no moment, defendant has failed to produce any license for any of the Copyrighted Recordings, yet it continues to infringe each of the Copyrighted Recordings.

41. In both emails from the President of defendant to plaintiff, defendant's President claimed: as "I said, we are very careful as a media company on this." Once again, defendant offers no support, and it clearly is not "very careful" because it had no license for any of the Copyrighted Recordings.

**Enhanced Statutory Damages**

42. Defendant's failure to comply with the notices from YouTube and plaintiff clearly satisfies the reckless disregard standard pursuant to Section 504© of the Act and the precedent in support.

7

43. Defendant and/or its agent knew when it synchronized the Copyrighted Recordings to the Infringing Advertisements that it had no license. Defendant knew it was infringing when it created, and when it uploaded the Infringing Advertisements to the various websites they currently remain, active and available as of the date of this Complaint.

**DMCA Claim**

44. Defendant did not include any identifying information in the Infringing Advertisements which would have allowed plaintiff to identify defendant's use of the Copyrighted Recordings. Specifically, the Infringing Advertisement omits the Copyrighted Recordings' title, album name, author, label, and copyright owner. Consequently, the Infringing Advertisement did not appear in dozens of searches conducted each year by plaintiff.

45. Defendant's removal and/or failure to include any copyright management information after notice is a violation of 17 U.S.C. § 1202 – the DMCA. Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

46. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

47. It cannot be disputed that the plaintiff has a valid, registered copyrights, and owns all rights to the Copyrighted Recordings.

48. Defendant without authority from plaintiff, reproduced, distribute, publicly displayed, and/or synchronized plaintiff's Copyrighted Recordings.

49. Defendant created and displayed the Infringing Advertisements for the sole purpose of commercial gain.

50. Defendant's use of the Copyrighted Recordings was not for criticism, comment, news reporting, teaching, scholarship, or research.

51. Defendant's use was not transformative.

52. Defendant elected to reproduce, synchronize, and/or distribute plaintiff's Copyrighted Recordings, using the entirety of each track, without a license.

53. As a direct and proximate result of defendant's infringement of plaintiff's exclusive rights to the Copyrighted Recordings as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of defendant' profits, and plaintiff's loss, plus costs, interest, and attorneys' fees.  Plaintiff may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement/reckless disregard of up to $150,000, but not less than $30,000.

## INFRINGING  CLAIM FOR RELIEF
## VIOLATION OF DMCA OF 1998, AS AMENDED,
## 17 U.S.C. §§ 1201, et seq.

54. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

55. Section 1202 provides in part: (b) No person shall, without the authority of the copyright owner or the law - (1) intentionally remove or alter any copyright management information, [or] (3) distribute . . . works [or] copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.  17 U.S.C. § 1202(b).

56. The DMCA states: "Definition.—As used in this section, the term "copyright management information" means any of the following information conveyed in connection with

9

copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work: (1) The title and other information identifying the work, including the information set forth on a notice of copyright. (2) The name of, and other identifying information about, the author of a work. (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work. (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work. (6) Terms and conditions for use of the work. (7) Identifying numbers or symbols referring to such information or links to such information. (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work." 17 U.S.C. § 1202(C); S.Rep. No. 105-190 (1988), note 18.

57. Plaintiff always distributes its copyrighted recordings, including the Copyrighted Recordings here, with copyright management information including the title, author, label, and copyright owner.

58. Defendant could not have obtained a copy of the master recording for the Copyrighted Recording without this information.

59. Master recordings are tightly controlled by plaintiff to prevent unauthorized commercial use – like the Infringing use at issue here.

60. A master recording is an authenticated and unbroken version of a musical Recording (typically 96 kHz / 24 bit) with the highest-possible resolution—as flawless as it sounded in the mastering suite.

61. Defendant's Infringing Advertisements ate synchronized to a very high-resolution copy of the Copyrighted Recordings.  This high-resolution versions cannot be obtained without copyright management information being included.

62. Defendant removed plaintiff's copyright management information, and copied, synchronized, publicly displayed, and/or distributed the Copyrighted Recordings.

63. Defendant failed to include any information which identified the Copyrighted Recordings, the author of the Copyrighted Recordings, the owner of any right in the Copyrighted Recordings, or information about the terms and conditions of use of the Copyrighted Recordings.

64. Defendant continued to publicly display the Infringing Advertisement with no attribution after YouTube informed defendant that the Copyrighted Recordings belonged to plaintiff.

65. Defendant violated the DMCA each time it wrongfully distributed the Infringing Advertisements.

66. Defendant did the forgoing with the intent to conceal the infringement.

67. Plaintiff seeks award of statutory damages for each violation of Section 1202 of the DMCA in the sum of $25,000.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant, and awarding plaintiff as follows:

1. restitution of defendant' unlawful proceeds;

2. compensatory damages in an amount to be ascertained at trial;

3. statutory damages to plaintiff according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

4. an award of statutory damages for each violation by defendant of the DMCA, 17 U.S.C. § 1202;

5. reasonable attorneys' fees and costs (17 U.S.C. § 505);

6. pre- and post-judgment interest to the extent allowable; and,

7. such other and further relief that the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 14, 2020       **GARBARINI FITZGERALD P.C.**
New York, New York

By: *[signature]*
Richard M. Garbarini (RG 5496)